UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Case No.  22-12654 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Latavia Garrett; Latrina Hall; and | ) | |
| Detroit Tax Solution LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The plaintiff United States of America, at the request of a delegate of the

Secretary of the Treasury and at the direction of a delegate of the Attorney

General, brings this action pursuant to 26 U.S.C. §§ 7401 and 7407 seeking an

injunction barring Latavia Garrett, Latrina Hall, and Detroit Tax Solution LLC

from engaging in the business of preparing federal tax returns and employing any

person acting as a federal tax return preparer.  In support of this action, the United

States alleges as follows:

### Jurisdiction and Parties

1.      Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C.

("Internal Revenue Code") §§ 7402(a) and 7407.

2.      Defendant Latavia Garrett ("Garrett") resides in Westland, Michigan,

within the jurisdiction of this Court.

3.     Defendant Latrina Hall ("Defendant Hall") resides in Lincoln Park, Michigan, within the jurisdiction of this Court.

4.     Defendant Detroit Tax Solution LLC ("Detroit Tax") maintains its principal place of business in Detroit, Michigan, within the jurisdiction of this Court.

## Background

5.     Defendants have prepared false federal income tax returns making use of several schemes.  A short explanation of relevant background principles of tax return preparation follows:

6.     The Form Schedule C is used to report income or loss from an individual's sole proprietorship business and is submitted to the Internal Revenue Service ("IRS") as an attachment to the individual's individual income tax return (Form 1040).  The overall income (or loss) from the Schedule C is reported as a line item on the individual's Form 1040.

7.     The Earned Income Tax Credit ("EITC") is a refundable tax credit available to certain low-income workers.  The amount of the credit is based on the taxpayer's earned income, filing status, and claimed number of dependents.  The requirements for claiming the EITC are set forth in 26 U.S.C. § 32 and the accompanying Treasury Regulations.  Because the EITC is a refundable credit, claiming an EITC can reduce a taxpayer's federal tax liability below zero, entitling

2

the taxpayer to a refund.  Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents, and for certain income ranges, individuals with higher annual incomes are entitled to a larger credit than those with lower annual incomes.  To bring a customer's reported earned income within the "sweet spot" for the EITC, *i.e.* the range of income resulting in maximum credit, and depending on a customer's actual earned income (as reported on a Form W-2), unscrupulous return preparers may report bogus dependents; inflate or fabricate self-employment (Schedule C) income to fraudulently increase a customer's reported earned income; or understate self-employment income to fraudulently reduce a customer's earned income.

8.    The Child Tax Credit (CTC) is a tax credit that allows taxpayers with income below a specified amount to reduce their federal income tax for each qualifying child they have.  The Additional Child Tax Credit (ACTC) is a refundable tax credit that enables some taxpayers to receive a refund based on the number of qualifying children they have if they get less than the full amount of the CTC.  For purposes of the CTC and ACTC , a qualifying child is a child who (a) is the child, grandchild, sibling, stepsibling, niece or nephew, stepniece or stepnephew of the taxpayer, (b) lived with the taxpayer for more than half of the year, (c) was under age 17, (d) provided less than half of his or her own support,

(e) did not file a joint tax return of his or her own, and (f) is a United States citizen or resident.

9.    Due to the difficulties legitimate small business owners faced from the COVID-19 Pandemic, Congress passed the 2021 Consolidated Appropriations Act to allow certain income earners to use 2019 earned income for eligibility of the EITC and Child Tax Credit in subsequent years.  Such prior income is called Prior Year Earned Income ("PYEI").

10.    To facilitate administration of the filing of tax returns, the IRS assigns individual tax preparers a Preparer Tax Identification Number ("PTIN"). Likewise, the IRS assigns tax preparation businesses an Electronic Filing Identification Number ("EFIN") authorizing electronic filing of returns by that business.  Any business that electronically files more than 11 returns a year is required to have an EFIN.  Both the PTIN and EFIN are specific to that individual or business and cannot be transferred or reassigned.  When a tax preparation business files an electronic return, it must include both the EFIN for the business and the PTIN for the individual tax preparer.

11.    IRS regulations require preparers to obtain from the agency (and renew annually) their PTIN.  26 U.S.C. § 6109(a)(4); 26 C.F.R. § 1.6109– 2(a), (e). Preparers must list that PTIN on any return they prepare.  26 C.F.R. § 1.6109–2(a). The IRS refers to preparers that do not identify themselves as "ghost preparers."

Under 26 U.S.C. § 6695, the IRS can assess penalties against return preparers who do not comply with the requirements of 26 U.S.C. § 6109.  In addition, a court can enjoin a return preparer who continually engages in conduct subject to penalty under § 6695 from preparing returns for others.  *See* 26 U.S.C. § 7407.

### The Defendants' Tax Preparation Business

12.    Garrett has acted as a federal tax return preparer since at least 2014. She is the founder, owner, principal, and registered agent of Detroit Tax.

13.    Defendant Hall has worked with Garrett at Detroit Tax as its Office Manager and a federal tax return preparer since at least 2017.  Defendant Hall also conducts marketing for the business and trains other preparers at the business. Defendant Hall has acted as a federal tax return preparer since at least 2013.

14.    From 2019 through 2021 (covering the 2018, 2019, and 2020 tax years), Detroit Tax prepared and filed an average of 873 individual federal income tax returns (Form 1040) per year.

15.    Garrett and Defendant Hall prepare most of the returns filed by Detroit Tax.  For tax years 2018, 2019, and 2020, Garrett prepared an average of 237 returns per year that were filed by Detroit Tax.  For tax year 2020, Defendant Hall prepared 415 returns that were filed by Detroit Tax.  For tax years 2018 and 2019, Defendant Hall prepared returns for customers of Detroit Tax as a "ghost preparer," meaning that Defendant Hall failed to sign the tax returns she prepared

and did not identify herself in any way on the returns.  Defendant Hall's actions have made it extremely difficult for the IRS to identify and detect the true scope of her illicit tax preparation activities.  But, interviews with customers, described below, confirm that Defendant Hall in fact prepared returns for customers of Detroit Tax.

### The Defendants' Tax Preparation Schemes

16.     Since at least 2018, and likely earlier, Defendants have prepared false and fraudulent Form 1040 U.S. Individual Income Tax Returns on behalf of their customers to reduce their customers' tax liabilities and to obtain tax refunds to which the customers are not entitled.

17.     The IRS has previously penalized Garrett for her return preparation activities.  For example, pursuant to 26 U.S.C. § 6695(g), the IRS assessed penalties against Garrett based on her failure to follow IRS due diligence requirements relating to returns claiming the EITC as follows:

| Year | Preparer | 26 U.S.C. § 6695(g) Penalty |
|------|----------|------------------------------|
| 2016 | Garrett  | $46,920 |
| 2017 | Garrett  | $34,170 |

18.     The IRS has also penalized Defendant Hall for her return preparation activities.  For example, in 2016, pursuant to 26 U.S.C. § 6695(g), the IRS assessed

$25,000 in penalties against Defendant Hall's prior employer, Liberty Tax, based on Defendant Hall's failure to follow IRS due diligence requirements relating to returns Defendant Hall prepared claiming the EITC.

19.     The IRS audit history of Defendants demonstrates rampant abuse resulting in significant tax harm.  First, IRS completed audits of 78 returns containing the Employer Identification Number ("EIN") used by Detroit Tax for the 2018 through 2020 tax years.  The IRS audits identified approximately $316,784 in deficiencies, for an average deficiency of $4,061 per audited return. Second, IRS completed audits of 46 returns containing Garrett's PTIN for the 2013 through 2018 tax years.  The IRS audits identified approximately $208,207 in deficiencies, for an average deficiency of $4,526 per audited return.  Third, IRS completed audits of 55 returns containing Defendant Hall's PTIN for the 2013 through 2016 tax years.  The IRS audits identified approximately $223,557 in deficiencies, for an average deficiency of $4,065 per audited return.

20.     As part of the return preparer investigation that led to the filing of this Complaint, the IRS interviewed 67 randomly selected customers whose tax year 2019 or 2020 returns were prepared by Defendants and whose returns contained either a Schedule C or included PYEI.  For tax year 2019, the IRS interviewed 33 customers whose returns were prepared by Detroit Tax and included a Schedule C. 14 of those returns (or 42%) required changes with an average tax loss of $2,413

7

per adjusted return. For tax year 2020, the IRS interviewed 20 customers whose

returns contained Schedules C and PYEI and were prepared by Garrett. 9 of those

returns (or 45%) required changes with an average tax loss of $3,162 per adjusted

return. For tax year 2020, the IRS also interviewed 14 customers whose returns

contained Schedules C and PYEI and were prepared by Defendant Hall. 10 of

those returns (or 71%) required changes with an average tax loss of $3,680 per

adjusted return. Based on these figures and the number of 2019 returns that

Defendants prepared and that contained a Schedule C and the number of 2020

returns that Defendants prepared that either contained a Schedule C or included

PYEI, the IRS has conservatively estimated that Defendants' fraudulent return

preparation activities may have caused a combined loss to the United States for tax

years 2019 and 2020 exceeding $1.2 million.

21.    Interviews with Defendants' customers show that Defendants

repeatedly reported false information in the returns they prepared. The purpose of

reporting false information was to reduce their customer's taxable income or

increase a refundable credit, and thereby increase any refund the customer might

receive.

22.    Often, the individual returns that Defendants prepared included

Schedules C containing false business-related income and deductions designed to

reduce the customer's taxable income or to make the customers eligible for credits

in subsequent years based on claimed, but not legitimate, PYEI.  In some cases, the preparer created a fictitious business in order to report such income and deductions on the customer's return.  When interviewed, multiple customers told the IRS that they either had no such business or had not incurred such business-related income and expenses and did not ask the return preparer to include these items on their returns.

23.    Defendants also prepared returns that (a) underreported W-2 income; (b) falsely claimed eligibility for tax credits, such as the Child Tax Credit and education credits; and (c) falsely claimed dependents so as to increase the amount of the EITC awarded to customers.  The foregoing schemes resulted in reduced taxable income and increased any refund the customer might have received.

24.    Defendants' actions also demonstrate affirmative acts of concealment: Defendants repeatedly failed to provide customers with copies of their tax returns, and Defendant Hall prepared many returns as a "ghost preparer."

**Specific Examples of Defendants' Fraudulent Return Preparation Practices**

25.    Some specific examples of the Defendants' fraudulent tax preparation activities are as follows.  All of the returns discussed below were filed identifying Detroit Tax as the preparer firm and were prepared by Garrett, Defendant Hall, or preparers trained or supervised by Defendants Garrett or Hall.  This Complaint refers to all CUSTOMERS with plural gender-neutral pronouns (their/they/them).

## CUSTOMER 1

26.     Garrett prepared CUSTOMER 1's 2019 and 2020 federal income tax returns.  When interviewed by the IRS, CUSTOMER 1 said that their 2019 and 2020 returns contained multiple false representations.

27.     The returns prepared by Garrett included a Schedule C reporting income and expenses from a social worker business purportedly operated by CUSTOMER 1.  According to the returns, CUSTOMER 1's business incurred $20,533 in combined losses in 2019 and 2020, thereby reducing CUSTOMER 1's taxable income in that amount.

28.     CUSTOMER 1 told the IRS that they did not operate a social worker business, were not self-employed, did not do any independent work, did not have – and did not give to Garrett – receipts for any business expenses, never discussed such a business with Garrett, and did not know where Garrett got the figures reported on the Schedules C.

29.     The 2020 return prepared by Garrett omitted income.  The IRS identified a form W-2 reporting over $11,000 in wage-earned income for CUSTOMER 1 that was not reported on their 2020 return.  During their interview with the IRS, CUSTOMER 1 confirmed they provided Garrett with a copy of that form W-2.

30.     The 2019 and 2020 returns prepared by Garrett showed CUSTOMER 1 as being entitled to a $1,045 refund, and a $395 refund, respectively.  After removing the above and other unsupported deductions, and including the underreported income for 2020, the IRS calculated CUSTOMER 1's true tax liability for 2019 and 2020 and determined that, rather than being entitled to a refund, CUSTOMER 1 owed the Government $2,551 for 2019 and $1,773 for 2020.  Therefore, based on the amounts owed but not collected and the amounts paid out for the refunds based on the filed returns, the Government suffered a loss of $3,596 for 2019 and $2,168 for 2020, for a total combined loss of $5,764.

### CUSTOMER 2

31.     Garrett prepared CUSTOMER 2's 2019 and 2020 federal income tax returns.  When interviewed by the IRS, CUSTOMER 2 said that their 2019 and 2020 return contained multiple false representations.

32.     The 2019 return prepared by Garrett included a Schedule C reporting income and expenses from a hairstyling business purportedly operated by CUSTOMER 2.  According to that 2019 return, CUSTOMER 2's hairstyling business incurred $1,427 in expenses and $8,503 in gross receipts, resulting in $7,076 in net profit.  Garrett then used that 2019 hairstyling income to justify CUSTOMER 2's eligibility for the 2020 EITC and Child Tax Credit, for which CUSTOMER 2 otherwise would not have qualified.

11

33.     CUSTOMER 2 told the IRS that they did not operate a hairstyling business, that they never discussed a hairstyling business with Garrett, and that they did not know where Garrett got the figures reported on the 2019 Schedule C.

34.     Garrett thus generated a bogus 2019 Schedule C so as to falsely use PYEI on the 2020 return.

35.     Garrett failed to provide CUSTOMER 2 with a copy of their 2019 return.

36.     The 2019 and 2020 returns prepared by Garrett showed CUSTOMER 2 as being entitled to a $6,785 refund, and a $9,310 refund, respectively.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 2's true tax liability for 2019 and 2020 and determined that, rather than being entitled to refunds in the amounts claimed, CUSTOMER 2 should have only received refunds in the amount of $4,179 for 2019 and $5,850 for 2020.  As a result, CUSTOMER 2 now owes, and the Government has suffered a loss in the amount of, $2,606 for 2019 and $3,460 for 2020, for a total combined loss of $6,066.

**CUSTOMER 3**

37.     Garrett prepared CUSTOMER 3's 2019 federal income tax return. When interviewed by the IRS, CUSTOMER 3 said that their 2019 return contained multiple false representations.

38.     The return prepared by Garrett included a Schedule C reporting income with no expenses from a receptionist business purportedly operated by CUSTOMER 3.  According to the return, CUSTOMER 3's business earned $14,587 in receipts, thereby providing a level of income necessary to qualify CUSTOMER 3 for the 2019 EITC and Child Tax Credit, which CUSTOMER 3 otherwise would not have qualified without the false Schedule C.

39.     CUSTOMER 3 told the IRS that they did not operate a receptionist business, that they never discussed such a business with Garrett, and that they did not know where Garrett got the figures reported on the Schedule C.  Instead, CUSTOMER 3 told the IRS they worked at Detroit Tax helping Garrett in the office, and for this work, Garrett paid CUSTOMER 3 "under the table." CUSTOMER 3 only worked in this capacity on weekends for a few months of 2018 and 2019, earning about $4,000 to $5,000 per year, and that they kept no records of the income because Garrett paid them under the table.

40.     The 2019 return prepared by Garrett showed CUSTOMER 3 as being entitled to a $5,843 refund.  After adjusting the false Schedule C and accounting for the underreported income, and making other adjustments, the IRS calculated CUSTOMER 3's true tax liability for 2019 and determined that, rather than being entitled to a refund in the amount claimed, CUSTOMER 3 should have only

13

received a refund in the amount of $3,054.  As a result, CUSTOMER 3 now owes, and the Government has suffered a loss in the amount of, $2,789.

## CUSTOMER 4

41.     Garrett prepared CUSTOMER 4's 2019 federal income tax return, and Latara Young of Detroit Tax prepared CUSTOMER 4's 2020 federal income tax return.  When interviewed by the IRS, CUSTOMER 4 said that their 2019 and 2020 return contained multiple false representations.

42.     The returns prepared by Garrett and Latara Young included Schedules C reporting expenses from a tutoring business purportedly operated by CUSTOMER 4.  According to the return, CUSTOMER 4's business incurred $32,906 in combined losses for 2019 and 2020 with no income either year, thereby reducing CUSTOMER 4's taxable income in that amount.

43.     CUSTOMER 4 told the IRS that they did not operate a tutoring business, was not self-employed, did not do any independent work, did not have receipts for any business expenses, never discussed such a business with Garrett or Latara Young, and did not know where Garrett or Latara Young got the figures reported on the Schedules C.  While CUSTOMER 4 worked as a teacher, her income was solely from her W-2 employer, not from a self-owned tutoring business, and CUSTOMER 4 provided the W-2 teacher forms to Garrett and the other preparer.

44.    Garrett and Latara Young failed to provide CUSTOMER 4 with a copy of their 2019 and 2020 returns.

45.    The 2019 and 2020 returns prepared by Garrett and Latara Young showed CUSTOMER 4 as being entitled to a $2,935 refund, and a $2,877 refund, respectively.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 4's true tax liability for 2019 and 2020 and determined that, rather than being entitled to refunds in the amounts claimed, CUSTOMER 4 should have only received refunds in the amount of $1,006 for 2019 and $1,011 for 2020.  As a result, CUSTOMER 4 now owes, and the Government has suffered a loss in the amount of, $1,929 for 2019 and $1,866 for 2020, for a total combined loss of $3,795.

**CUSTOMER 5**

46.    Defendant Hall, acting as a ghost preparer, prepared CUSTOMER 5's 2019 federal income tax return.  When interviewed by the IRS, CUSTOMER 5 said that their 2019 return contained multiple false representations.

47.    The 2019 return identifies Anthony Hall of Detroit Tax as the preparer, but, when interviewed, CUSTOMER 5 stated their return was prepared by Defendant Hall.  Further, CUSTOMER 5 stated they gave their information and documents to Defendant Hall, including by sending information directly to

Defendant Hall by text message, and that they have used Defendant Hall as their return preparer for several years.

48.     The 2019 return prepared by Defendant Hall included a Schedule C reporting income from a home care service business purportedly operated by CUSTOMER 5.  According to that 2019 return, CUSTOMER 5's home car service business earned $16,980 in profit with no expenses.  Defendant Hall then used that business income to justify CUSTOMER 5's eligibility for the EITC, for which CUSTOMER 5 otherwise would not have qualified.

49.     CUSTOMER 5 told the IRS that they did not operate a home care business, they did not work at all in 2019 and only had social security income, did not provide any records to Defendant Hall for such a business, never discussed such a business with Defendant Hall, and that they did not know where Defendant Hall or Anthony Hall got the figures reported on the Schedule C.

50.     The 2019 return prepared by Defendant Hall also falsely included an extra dependent so as to falsely increase the amount of CUSTOMER 5's EITC. CUSTOMER 5's daughter is listed as a dependent on the return, but when interviewed, CUSTOMER 5 confirmed to the IRS that their daughter has not lived with them since 2015, that they did not discuss listing the daughter on the return, that they did not provide any documents to claim the daughter, and they previously told Defendant Hall that the daughter had moved out years ago.

51.    The 2019 return prepared by Defendant Hall also included false education credits.  The 2019 return reported $4,000 in qualified education expenses purportedly incurred by CUSTOMER 5's daughter on Form 8863.  But when interviewed CUSTOMER 5 stated that their daughter did not attend any college, that she does not live with CUSTOMER 5, and that they did not provide any of this information to Defendant Hall.

52.    The 2019 return prepared by Defendant Hall showed CUSTOMER 5 as being entitled to a $4,429 refund.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 5's true tax liability for 2019 and determined that, CUSTOMER 5 was not entitled to any refund.  As a result, Customer 5 now owes, and the Government has suffered a loss in the amount of, $4,429.

## CUSTOMER 6

53.    Defendant Hall, acting as a ghost preparer, prepared CUSTOMER 6's 2019 federal income tax return.  When interviewed by the IRS, CUSTOMER 6 said that their 2019 return contained multiple false representations.

54.    The 2019 return identifies Anthony Hall of Detroit Tax as the preparer, but when interviewed, CUSTOMER 6 stated their return was prepared by Defendant Hall.  Further, CUSTOMER 6 stated that, initially, Anthony Hall input CUSTOMER 6's name and address into the computer, but he was not the preparer.

17

Rather, CUSTOMER 6 made an appointment with Defendant Hall and went to Defendant Hall's office to have their return prepared.  CUSTOMER 6 further stated that they then answered Defendant Hall's questions and provided documents to Defendant Hall.

55.     The return prepared by Defendant Hall included a Schedule C reporting expenses (and no income) from a baking business purportedly operated by CUSTOMER 6.  According to the return, CUSTOMER 6's business incurred $14,471 in loss, thereby reducing CUSTOMER 6's taxable income in that amount.

56.     CUSTOMER 6 told the IRS that they, on occasion, baked for family and friends, charging $25 per order and earning about $1,000 in 2019; they keep a notebook that has the dates and order amounts for the baking sales; and they only incurred minor expenses for flour and delivery costs.  In contrast, though, the Schedule C prepared by Defendant Hall included $8,999 in rent expenses, even though CUSTOMER 6 incurred no costs to rent, for example, a kitchen, and instead used only simple cake pans and a blender to bake for their family and friends.  Similarly, the Schedule C prepared by Defendant Hall included $1,803 in phone expenses, even though CUSTOMER 6 did not incur that phone expense nor discuss it with Defendant Hall.  Further, the Schedule C included grossly overstated travel expenses, and failed to report the roughly $1,000 in gross

receipts.  CUSTOMER 6 stated that they did not discuss these grossly inflated expenses with Defendant Hall.

57.    The 2019 return prepared by Defendant Hall omitted income and incorrectly reported other income.  CUSTOMER 6 provided two W-2 forms from the same employer, one for 2018 and one for 2019, to Defendant Hall, with the instruction that Defendant Hall shall use the 2018 W-2 form to amend CUSTOMER 6's 2018 tax return.  Instead, Defendant Hall included both years' W-2 forms on CUSTOMER 6's 2019 return.

58.    The 2019 return prepared by Defendant Hall showed CUSTOMER 6 as being entitled to a $7,815 refund.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 6's true tax liability for 2019 and determined that, rather than being entitled to a refund in the amount claimed, CUSTOMER 6 should have only received a refund in the amount of $5,350.  As a result, CUSTOMER 6 now owes, and the Government has suffered a loss in the amount of, $2,465.

**CUSTOMER 7**

59.    Defendant Hall, acting as a ghost preparer, prepared CUSTOMER 7's 2019 federal income tax return, and Defendant Hall, using her PTIN, prepared CUSTOMER 7's 2020 federal income tax return.  When interviewed by the IRS,

CUSTOMER 7 said that their 2019 and 2020 returns contained multiple false representations.

60.     The 2019 return identifies Danielle Betts of Detroit Tax as the preparer, but when interviewed, CUSTOMER 7 stated their 2019 return was prepared by Defendant Hall.  Further, CUSTOMER 7 stated they have retained Defendant Hall for the past 8 years, including when Defendant Hall had worked at Liberty Tax, and the only preparer they have worked with during these past 8 years has been Defendant Hall.

61.     The 2019 return prepared by Defendant Hall included a Schedule C reporting income and expenses from a home care aide business purportedly operated by CUSTOMER 7.  According to that 2019 return, CUSTOMER 7's home care aide business incurred $450 in expenses and $8,990 in gross receipts, resulting in $8,540 in net profit.  Defendant Hall then used that 2019 home care aide income to justify CUSTOMER 7's eligibility for the 2020 EITC and Child Tax Credit, for which CUSTOMER 7 otherwise would not have qualified.

62.     CUSTOMER 7 told the IRS that they did not operate a home care aide business, that they did not provide any records for a home care aide business to Defendant Hall, they never discussed such a business with Defendant Hall, and that they did not know where Defendant Hall got the figures reported on the 2019 Schedule C.

63.     Defendant Hall used the bogus 2019 Schedule C so as to falsely report PYEI on the 2020 return, thus enabling CUSTOMER 7 to claim the 2020 EITC and Child Tax Credit, even though CUSTOMER 7 had no wage-earned income in 2020, only unemployment income.

64.     The 2019 and 2020 returns prepared by Defendant Hall showed CUSTOMER 7 as being entitled to a $3,567 refund, and a $6,656 refund, respectively.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 7's true tax liability for 2019 and 2020 and determined that, rather than being entitled to refunds in the amounts claimed, CUSTOMER 7 should have only received refunds in the amount of $1,036 for 2019 and $2,860 for 2020.  As a result, CUSTOMER 7 now owes, and the Government has suffered a loss in the amount of, $2,531 for 2019 and $3,796 for 2020, for a total combined loss of $6,327.

### CUSTOMER 8

65.     Defendant Hall, acting as a ghost preparer, prepared CUSTOMER 8's 2019 federal income tax return.  When interviewed by the IRS, CUSTOMER 8 said that their 2019 return contained multiple false representations.

66.     The 2019 return identifies Valadia Hall of Detroit Tax as the preparer, but when interviewed, CUSTOMER 8 stated their 2019 return was prepared by

Defendant Hall.  Further, CUSTOMER 8 stated they have retained Defendant Hall for the past 3 years and that Valadia Hall did not prepare their 2019 return.

67.    The return prepared by Defendant Hall included a Schedule C reporting income and expenses for an Uber driver business purportedly operated by CUSTOMER 8.  According to the return, CUSTOMER 8's Uber driver business earned $11 in income and incurred $8,456 in expenses, resulting in a $8,445 loss, thereby reducing CUSTOMER 8's taxable income in that amount.

68.    CUSTOMER 8 told the IRS that they did not operate an Uber driver business.  Instead, CUSTOMER 8 worked for Door Dash 1-2 days a week, and thus the 2019 Schedule C reporting only $11 in income is too low, as they earned $60-70 a week.  Further, CUSTOMER 8 stated their only expense was for gas, but the 2019 Schedule C reported rent expenses of $4,987, supply expenses of $1,339, and phone expenses of $2,130.  CUSTOMER 8 stated that they did not incur those expenses and did not provide records of expenses to Defendant Hall, and that the only expense CUSTOMER 8 discussed with Defendant Hall was about $200-$600 of gas expense for the year.

69.    The 2019 return prepared by Defendant Hall showed CUSTOMER 8 as being entitled to a $2,083 refund.  After removing the above and other unsupported deductions, and including the omitted Door Dash income, the IRS calculated CUSTOMER 8's true tax liability for 2019 and determined that, rather

22

than being entitled to a refund in the amount claimed, CUSTOMER 8 should have only received a refund in the amount of $384.  As a result, CUSTOMER 8 now owes, and the Government has suffered a loss in the amount of, $1,699.

### CUSTOMER 9

70.     Defendant Hall prepared CUSTOMER 9's 2020 federal income tax return.  When interviewed by the IRS, CUSTOMER 9 said that their 2020 return contained multiple false representations.

71.     The return prepared by Defendant Hall included a Schedule C reporting income and expenses for a home health care business purportedly operated by CUSTOMER 9.  According to the return, CUSTOMER 9's home health care business earned $750 in income and incurred $10,699 in expenses, resulting in a $9,949 loss, thereby reducing CUSTOMER 9's taxable income in that amount.

72.     CUSTOMER 9 told the IRS that they did not operate a home health care business.  Further, CUSTOMER 9 stated they were not self-employed in 2020, did not discuss such a business with Defendant Hall, did not provide any income and expense records or numbers to Defendant Hall, and does not know why income and expenses for such a business were reported on the Schedule C.

73.     The 2020 return prepared by Defendant Hall omitted income.  The IRS identified two forms W-2 for CUSTOMER 9 for 2020.  While the 2020 return

23

reported income associated with one such form W-2, the 2020 return omitted the income from the second form W-2.  CUSTOMER 9 told the IRS they informed Defendant Hall that they had two forms W-2s for 2020 and that they were waiting on their receipt of the second form W-2 before filing their return.  Despite this warning, Defendant Hall nevertheless filed the 2020 return omitting the income from the second W-2.

74.     Defendant Hall failed to provide CUSTOMER 9 with a copy of their 2020 return.

75.     The 2020 return prepared by Defendant Hall showed CUSTOMER 9 as being entitled to a $5,045 refund.  After including the omitted income and removing the above and other unsupported deductions, the IRS calculated CUSTOMER 9's true tax liability for 2020 and determined that, rather than being entitled to a refund in the amount claimed, CUSTOMER 9 should have only received a refund in the amount of $2,094.  As a result, CUSTOMER 9 now owes, and the Government has suffered a loss in the amount of, $2,951.

**CUSTOMER 10**

76.     Defendant Hall, acting as a ghost preparer, prepared CUSTOMER 10's 2019 federal income tax return, and Defendant Hall, using her PTIN, prepared CUSTOMER 10's 2020 federal income tax return.  When interviewed by the IRS,

CUSTOMER 10 said that their 2019 and 2020 returns contained multiple false representations.

77.     The 2019 return identifies Renaisha Chaney of Detroit Tax as the preparer, but when interviewed, CUSTOMER 10 stated their 2019 return was prepared by Defendant Hall.  Further, CUSTOMER 10 stated they have retained Defendant Hall for the past 3 years and that they provided their W-2 and other tax information to Defendant Hall.

78.     The 2019 and 2020 returns prepared by Defendant Hall included Schedules C reporting expenses for a home care aide business purportedly operated by CUSTOMER 10.  According to the 2019 and 2020 returns, CUSTOMER 10's home health care business incurred $21,579 and $11,469 in expenses respectively – and no income either year – thereby reducing CUSTOMER 10's taxable income each year in the amount of the incurred expenses.

79.     CUSTOMER 10 told the IRS that they did not operate a home care aide business.  Further, CUSTOMER 10 stated they were not self-employed. CUSTOMER 10 said they are trying to develop an online boutique company, but has not yet started the business and did not incur any expenses in 2019 or 2020. Further, CUSTOMER 10 stated they did not tell Defendant Hall they had a home care aide business, did not provide any records of expenses, the expenses listed on their Schedules C (for rent and supplies) have no relation to their W-2 job as an

25

automobile assembler, and they do not know where Defendant Hall got the figures listed on the Schedules C.

80.     Defendant Hall failed to provide CUSTOMER 10 with a copy of their 2019 and 2020 returns.

81.     The 2019 and 2020 returns prepared by Defendant Hall showed CUSTOMER 10 as being entitled to a $7,238 refund, and a $3,995 refund, respectively.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 10's true tax liability for 2019 and 2020 and determined that, rather than being entitled to refunds in the amounts claimed, CUSTOMER 10 should have only received refunds in the amount of $2,207 for 2019 and $946 for 2020.  As a result, CUSTOMER 10 now owes, and the Government has suffered a loss in the amount of, $5,031 for 2019 and $3,049 for 2020, for a total combined loss of $8,080.

## CUSTOMER 11

82.     Valadia Hall prepared CUSTOMER 11's 2019 federal income tax return.  When interviewed by the IRS, CUSTOMER 11 said that their 2019 return contained multiple false representations.

83.     The return prepared by Valadia Hall included a Schedule C reporting expenses from a vending business purportedly operated by CUSTOMER 11. According to the return, CUSTOMER 11's business had no income and incurred a

loss of $17,298, thereby reducing CUSTOMER 11's taxable income in that amount.

84.     CUSTOMER 11 told the IRS that they did not operate a vending business, they did not incur the expenses claimed on the Schedule C, and they had not worked anywhere in 2019 except for their W-2 employer.  Further, CUSTOMER 11 stated that they never discussed such a business with Valadia Hall and that they did not know where Valadia Hall got the figures reported on the Schedule C.

85.     The 2019 return prepared by Valadia Hall showed CUSTOMER 11 as being entitled to a $4,665 refund.  After removing the above and other unsupported deductions, the IRS calculated CUSTOMER 11's true tax liability for 2019 and determined that, rather than being entitled to a refund in the amount claimed, CUSTOMER 11 should have only received a refund in the amount of $1,760.  As a result, CUSTOMER 11 now owes, and the Government has suffered a loss in the amount of, $2,905.

## HARM TO THE UNITED STATES

86.     Defendants' customers have been harmed because they paid Defendants fees to prepare proper tax returns, but instead Defendants prepared false and fraudulent returns that substantially underreported and underpaid the

customers' correct tax liabilities, potentially exposing the customers to statutory penalties.

87.    The United States has been harmed financially because it has not received, and may never be able to collect, the taxes lawfully due and owing from Defendants' customers.  As alleged above, *see infra* Paragraph 20, the IRS has estimated that the combined loss to the United States from Defendants' return preparation activities for tax years 2019 and 2020 may exceed $1.2 million.

88.    Defendants further harm the United States because the IRS must devote some of its limited resources to investigating Defendants' tax return preparation, including identifying customers, ascertaining their customers' correct tax liabilities through a review of their tax filings and scheduling and conducting interviews, recovering any refunds erroneously issued, and attempting to collect any additional taxes and penalties, some of which may not be collectible.

89.    In addition to the direct harm Defendants have caused the United States by preparing false and fraudulent tax returns, Defendants' activities (a) undermine public confidence in the administration of the federal tax system because, among other things, their fraudulent use of the EITC damages public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment; and (b) encourage noncompliance with the internal revenue laws.

90.     Defendants also cause intangible harm to honest tax return preparers, over whom Defendants gain an unfair competitive advantage by preparing returns that falsely or fraudulently underreport their customers' tax liabilities.

### COUNT I – Injunction Under 26 U.S.C. § 7407
### for Violations of 26 U.S.C. §6694(a) and (b), § 6695

91.     The United States incorporates by reference the allegations in paragraphs 1 through 90 above.

92.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin any tax return preparer from further engaging in conduct subject to penalty under section 6694 or 6695 of the Code, or any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws, if injunctive relief is appropriate to prevent the recurrence of such conduct.

93.     26 U.S.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or a substantial portion thereof.

94.     Defendants are tax return preparers within the meaning of 26 U.S.C. § 7701(a)(36).

95.     26 U.S.C. § 6694(a) penalizes a tax return preparer if: (1) the preparer prepared a return or claim for refund that included an understatement of liability

due to a position for which there was not substantial authority; and (2) the preparer knew (or reasonably should have known) of such position.

96.     26 U.S.C. § 6694(e) defines understatement of liability to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

97.     In violation of 26 U.S.C. § 6694(a), Defendants prepared returns for customers that understated their customers' tax liabilities and that they knew or should have known contained positions for which there was no substantial authority or for which there was no reasonable basis.

98.     26 U.S.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim for refund with an understatement of liability: (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

99.     In violation of 26 U.S.C. §§ 6694(a) and (b), Defendants prepared tax returns for customers that they knew or reasonably should have known understated their liabilities and/or overstated refunds.  Defendants knew or reasonably should have known that the returns they prepared included false information including but not limited to (a) false or inflated Schedule C income, expenses, or losses; (b) unsupported eligibility for the EITC; (c) unsupported eligibility for the Child Tax

Credit; (d) unsupported eligibility for education credits; and (e) false reporting of PYEI.

100.   In further violation of 26 U.S.C. § 6694(b), the Defendants recklessly or intentionally disregarded rules and/or regulations by fabricating or inflating deductions and credits for their customers to understate their customers' tax liabilities.

101.   26 U.S.C. § 6695(a) penalizes a tax return preparer who fails to furnish a completed copy of any return or claim for refund to the taxpayer.

102.   In violation of 26 U.S.C. § 6695(a), Defendants have continually and repeatedly failed to provide customers with a complete copy of the tax return filed on their behalf.

103.   26 U.S.C. § 6695(b) penalizes a tax return preparer who fails to sign a return, and § 6695(c) penalizes a tax return preparer who fails to furnish their identifying number as required by § 6109(a).

104.   In violation of 26 U.S.C. §§ 6695(b) and (c), Defendants, including in particular Defendant Hall, have continually and repeatedly prepared – or supervised the preparation of – returns as a "ghost preparer," *i.e.* Defendants failed to furnish their identifying number and failed to sign tax returns they prepared or allowed someone else to sign their name on prepared tax returns that they did not prepare.

31

105.   26 U.S.C. § 6695(g) penalizes a tax return preparer who fails to comply with due diligence requirements when determining eligibility for the ETIC.

106.   In violation of 26 U.S.C. § 6695(g), Defendants failed to exercise requisite due diligence when claiming the EITC on returns they filed, and further, Defendants did so despite the fact that the IRS previously imposed § 6695(g) penalties against them or their employer for work they performed.

107.   An injunction against the Defendants is necessary and appropriate to prevent the recurrence of this conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695.

108.   Additionally, under 26 U.S.C. § 7407, if the court finds that a return preparer has continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if the court further finds that a narrower injunction prohibiting only the enumerated conduct would not be sufficient to prevent further interference with the proper administration of the internal revenue laws, the court may enjoin that person from further acting as a federal income tax return preparer.

109.   Given the variety, duration, and duplicity of Defendants' fraudulent preparation activities, anything less than a permanent injunction and complete bar

on the preparation of tax returns is unlikely to stop the Defendants from preparing

fraudulent tax returns.

### COUNT II - Injunction Under 26 U.S.C. § 7402(a)

110.   The United States incorporates by reference the allegations in

paragraphs 1 through 90 above.

111.   Pursuant to 26 U.S.C. § 7402(a), a court is authorized to issue orders

of injunctions as may be necessary or appropriate to enforce the internal revenue

laws.

112.   26 U.S.C. § 7402(a) expressly provides that its injunction remedy is

"in addition to and not exclusive of" other remedies for enforcing the internal

revenue laws.

113.   Defendants' activities described above substantially interfere with the

enforcement of the internal revenue laws because Defendants prepare and file

numerous fraudulent tax returns that result in customers not paying their true

federal tax liabilities and receiving tax refunds to which they are not entitled.

114.   An injunction prohibiting the Defendants from preparing or assisting

in the preparation of tax returns is needed to stop them from preparing and filing

fraudulent tax returns and to prohibit them from otherwise interfering with the

proper administration and enforcement of the internal revenue laws now and in the

future.  By contrast, Defendants will not suffer any cognizable harm by being

enjoined from acting as tax return preparers given that, when acting as tax return preparers, they prepare fraudulent returns that harm the United States.

115.   If Defendants are not enjoined, the United States will continue to suffer irreparable harm from the underpayment of taxes and the exhaustion of resources to enforce the internal revenue laws.

116.   The public interest would be advanced by enjoining the Defendants because an injunction will stop their illegal conduct and the harm that the conduct is causing the United States Treasury and the public.

117.   An injunction under 26 U.S.C. § 7402 is necessary and appropriate because the United States has no adequate remedy at law.

**WHEREFORE**, the plaintiff United States of America requests the following relief:

A.     That the Court find that the Defendants continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695; that, pursuant to 26 U.S.C. § 7407, an injunction merely prohibiting conduct subject to penalty would be insufficient to prevent the Defendants' interference with the proper administration of the tax laws; and that the Defendants should be permanently enjoined from acting as tax return preparers and employing any person acting as a federal tax return preparer;

B.      That the Court find that the Defendants have interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to 26 U.S.C. § 7402(a);

C.      That this Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter a permanent injunction enjoining Garrett, Defendant Hall, and Detroit Tax, as well as Defendants' officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with them, from directly or indirectly:

1.      Preparing, assisting, or directing the preparation or filing of federal tax returns, amended returns, and other federal tax documents and forms for anyone other than themselves;

2.      Owning, operating, managing, assisting, investing in, receiving fees or remuneration from, controlling, licensing, assigning their interest in, franchising, consulting with, working for, or volunteering for an entity that prepares, assists in the preparation of or files, federal tax returns or other federal tax documents or forms for other persons, or represents persons before the IRS;

3.      Providing office space, equipment, or services for, collecting Forms W-2 and 1099 from customers, or in any other way facilitating, the work of any person or entity that prepares, assists in the preparation of or files federal tax returns or other federal tax documents or forms for other persons, or represents persons before the IRS;

4.      Advertising tax return preparation services through any medium, including print, online, and social media;

5.      Maintaining, assigning, transferring, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

6.      Representing any person in connection with any matter before the IRS;

7.      Employing any person to work as a federal tax return preparer;

8.      Training, advising, counselling, instructing, or teaching anyone regarding tax preparation, or creating or providing anyone with cheat sheets, memoranda, directions, instructions, or manuals pertaining to the preparation of federal tax returns;

9.      Referring any person to a tax preparation firm or a tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

10.     Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of the Defendants generated by their tax return preparation activities, including but not limited to customer lists; and

11.     Engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or that substantially interferes with the administration and enforcement of the internal revenue laws.

D.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring the Defendants at their own expense within 30 days of the Court's order:

1.      To prominently post a copy of this order of permanent injunction (with dimensions of at least 12 by 24 inches) at all physical locations where the Defendants conduct any type of business and requiring the Defendants to prominently post an electronic copy of the permanent injunction on any website or social media site or social media profile that the Defendants maintain or create over the next five years, excluding social media profiles that are entirely personal in nature;

2.      To produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) all persons for whom the Defendants prepared federal tax returns or claims for a refund, between January 1, 2019, and continuing through

this litigation;

3. To contact by email, if an email address is known, or otherwise by U.S. mail, (a) all persons for whom the Defendants have prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2019, as well as (b) all employees, independent contractors, and vendors the Defendants have had or retained since January 1, 2019, and to inform them of the permanent injunction entered against the Defendants by sending each of them a copy of the order of permanent injunction, with no other text, enclosures, or attachments unless approved in writing by the Department of Justice;

4. To disclose and surrender to the Secretary of the Treasury or his delegate any and all PTINs held by, assigned to, or used by Defendants, pursuant to 26 U.S.C. § 6109, as well as any electronic filing identification numbers held by, assigned to, or used by Defendants; and

5. To keep records of Defendants' compliance with the foregoing directives in this Paragraph D (including subparts D.1 to D.5), which may be produced to the Court or counsel for the United States, if requested.

E. That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring the Defendants, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that the Defendants have received a copy of the Court's order and have complied with the terms described in Paragraph D (including subparts D.1 to D.5) of this Complaint;

F. That this Court permit the United States to conduct post-judgment discovery to ensure the Defendants' compliance with the permanent injunction;

G. That this Court retain jurisdiction over the Defendants and over this action to enforce any injunction entered against them; and

H.      That this Court grant the United States recovery for its costs incurred

in this litigation and grant such other and further relief as the Court deems

appropriate.

Dated:  November 3, 2022                    DAVID A. HUBBERT
                                           Deputy Assistant Attorney General
                                           U.S. Department of Justice, Tax Division

                                           */s/ Joseph M. Kaufman*
                                           JOSEPH M. KAUFMAN
                                           Trial Attorney, Tax Division
                                           U.S. Department of Justice
                                           P.O. Box 55
                                           Washington, D.C. 20044
                                           Tel: (202) 598-5508; Fax: (202) 514-5238
                                           joseph.m.kaufman@usdoj.gov

Local Counsel:
DAWN N. ISON
United States Attorney
Eastern District of Michigan

KEVIN ERSKINE
Civil Division, Chief, U.S. Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
Tel: (313) 226-9610